IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>OLUYOMI OMOBOLANLE BOMBATA,<br><br>Defendant. | Case No. 24-CR-208-JFH<br>(24-MJ-387-DES) |

## ORDER

Before the Court is the Appeal of Magistrate Judge's Order ("Appeal") filed by the United States of America ("Government"). Dkt. No. 13. In its Appeal, the Government seeks revocation of an order entered by United States Magistrate Judge Beth W. Jantz, sitting in the Northern District of Illinois, setting conditions of release for Defendant Oluyomi Omobolanle Bombata ("Defendant"). The Court has reviewed Defendant's Response [Dkt. No. 20], the Government's supplement [Dkt. No. 23], and the transcript of the detention hearing [Dkt. No. 22-1]. For the following reasons, the Government's Appeal is GRANTED.

## BACKGROUND

Defendant is charged with: (1) Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. §§ 1349; (2) Wire Fraud, in violation of 18 U.S.C. § 1343 & 2; (3) Money Laundering Conspiracy, in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(1)(B)(i); (4) Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) & 2; and (5) Unlawful Monetary Transactions, in violation of 18 U.S.C. § 1957. Dkt. No. 26. On November 20, 2024, Defendant was arrested in the Northern District of Illinois. Dkt. No. 17 at 2. On November 26, 2024, United States Magistrate Judge Beth Jantz held a detention hearing and ordered Defendant released on conditions. *Id.* at 3. The Government moved to stay the release order pending an appeal. *Id.*

Magistrate Judge Jantz granted a stay through November 27, 2024, at 12:00 pm. *Id.* Upon filing of the Government's Appeal in this Court on November 26, 2024, this Court extended the stay of Defendant's release pending its ruling on the Government's Appeal. Dkt. No. 15.

## AUTHORITY AND ANALYSIS

Under 18 U.S.C. § 3145(a), "[i]f a person is ordered released by a magistrate judge . . . the attorney for the government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release[.]" 18 U.S.C. § 3145(a). The Tenth Circuit requires this Court to conduct a *de novo* review of a magistrate judge's release order. *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003). "On *de novo* review of a magistrate judge's order, the district court is charged with making 'an independent determination of the proper pretrial detention or conditions for release.'" *United States v. Garcia*, 445 Fed. Appx. 105, 108 (10th Cir. 2011) (unpublished and quoting *Cisneros*, 328 F.3d at 616 n.1).

Pursuant to the Bail Reform Act, a defendant may be detained pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). At such a hearing, the Government bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness by clear and convincing evidence. *Cisneros*, 328 F. 3d at 616; 18 U.S.C. § 3142(f). To determine whether there are conditions which can assure the defendant's appearance at trial and the safety of the community, the Court must consider:

(1)     The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2)   The weight of the evidence against the person;

(3)   The history and characteristic of the person, including –

   a.   The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   b.   Whether, at the time of the current offense, or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal or completion of sentence for an offense under Federal, State, or local law; and

(4)   The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Here, the Court has conducted a de novo review based on the parties' briefing and the transcript of the detention hearing.

I.   **Consideration of the 18 U.S.C. § 3142(g) factors.**

   **a. The Nature and Circumstances of the Offense Charged**

Defendant is charged with:  (1) Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349; (2) Wire Fraud, in violation of 18 U.S.C. §§ 1343 & 2; (3) Money Laundering Conspiracy, in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(1)(B)(i); (4) Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) & 2; and (5) Unlawful Monetary Transactions, in violation of 18 U.S.C. § 1957.  Dkt. No. 26.  Specifically, Defendant is alleged to have participated in a conspiracy to defraud businesses out of large sums of money.  Dkt. No. 22-1 at 14-15.

The Government alleges that beginning in June 2023 and continuing through September 2023, Defendant and other co-conspirators devised and executed a scheme to obtain money by deceiving victims into wiring funds to fraudulent bank accounts.  Dkt. No. 25 at 3.  The victims

were targeted through business email compromises ("BECs"), a type of fraud that involves conspirators sending email messages that appear to come from a colleague, vendor, or business associate making a legitimate request. *Id.* at 1, 3. As part of the scheme, Defendant and co-conspirator Jalen Jace Cancel ("Cancel") opened and maintained bank accounts in the names of shell corporations, which were used to receive victim funds. Once the victims sent the funds, Defendant and Cancel wired the funds to accounts owned by shell corporations or other co-conspirators. *Id.* at 3.

The charged conduct involves Overland Corporation ("Overland") located in Ardmore, Oklahoma. Dkt. No. 23 at 4; Dkt. No. 26 at 2. Through a sophisticated BEC, co-conspirators operating in Nigeria, Ukraine, and the United Kingdom, obtained access to the login credentials of M.T., who was Overland's staff accountant. Dkt. No. 1 at 4-10. Using the credentials, a co-conspirator logged in as M.T. and changed her email settings to hide emails from Dolse Brothers Corporation ("Dolse"), a legitimate company with whom Overland had done business for approximately 30 years and to whom Overland owed payment. *Id.* at 10. This was done to allow spoof emails appearing to be from Dolse to remain undetected. *Id.*

Meanwhile, Defendant provided Cancel with instructions and false identification with which to open a fraudulent Citibank account in the name of Dexterc Shaws LLC ("Citibank account"). *Id.* at 12-29. Impersonating a Dolse employee, a co-conspirator emailed M.T. and advised her that Dolse had a new bank account to which invoice payments should be directed. *Id.* at 6. M.T. was provided the account information for the fraudulent Citibank account. *Id.* at 6. On September 15, 2023, Overland wired approximately $546,053.30 to that account. *Id.* at 5, 29. Subsequently, Defendant directed Cancel to make several transfers from the Citibank account to

what appear to be other fraudulent accounts. *Id.* at 29-32.

There is no doubt that these are serious allegations. Under §§ 1343, 1349, and 1956, the wire fraud offenses and money laundering offenses are each punishable by a term of imprisonment up to 20 years imprisonment and under § 1957, the unlawful monetary transaction offense is punishable by up to 10 years imprisonment. Accordingly, this factor weighs in favor of detention.

### b. The Weight of the Evidence

The evidence against Defendant includes: (1) a post-Miranda admission by Defendant that "he participated in the fraudulent scheme he has been charged with and that he worked at the direction of the person known to be running the scheme" [Dkt. No. 22-1 at 9]; and (2) Telegram messages obtained from phones seized from Defendant at his arrest. Dkt. No. 1 at 18-32. The Telegram messages support the Government's assertions that Defendant: (1) facilitated the opening of the fraudulent bank account to which the transfers totaling $546,053.30 were made by providing Cancel with fraudulent identification and instructions regarding the Citibank account; and (2) directed subsequent transfers of the money from the Citibank account to different accounts. *Id.* Due to the significant weight of this evidence, this factor weighs in favor of detention.

### c. The History and Characteristics of the Person

Defendant is a 25-year-old man, who, at the time of his arrest, resided with his parents in Chicago, Illinois and was not working or pursing schooling. Dkt. No. 22-1 at 20-21. As discussed at the detention hearing, Defendant has strong family ties to Chicago where his immediate family resides. However, there is no evidence in the record that Defendant has any ties to the Eastern District of Oklahoma.

Defendant's criminal history includes: (1) a 2020[1] arrest for money laundering, unlawfully

---

[1] During its proffer at the detention hearing, the Government asserted that this arrest occurred in

carrying a weapon, and fraudulently using or possession identifying information (for which he completed pretrial diversion); and (2) a 2024 arrest for aggravated unlawful use of a weapon (for which the charges are still pending in state court in Illinois). *Id.* at 10-11. Regarding the 2020 arrest, the Government asserts that Defendant was involved in a fight where guns were drawn. Dkt. No. 23 at 12. And, when Defendant was arrested, he was in possession of $17,000 in cash, a loaded Glock 19 handgun, and multiple credit/debit cards, checkbooks, and checks which were in the names of other individuals and businesses. *Id.* Regarding the 2024 arrest, the Government asserts that on the same day, prior to the arrest, Defendant was the subject of a traffic stop and gave law enforcement a false form identification then fled the scene. Dkt. No. 22-1 at 11. When he was ultimately arrested, Defendant was "in possession of a fake Illinois driver's license and credit/debit cards with the names of other individuals on them." Dkt. No. 23 at 12. When Defendant was arrested for the instant offense, he was in possession of multiple debit cards in the names of other individuals and businesses. *Id.* at 10.

As the Government points out, the international compartmentalization of the conspiracy at issue in this case "highlights Defendant's ties to individuals and communities abroad." Dkt. No. 23 at 5. The scheme involved conspirators from Nigeria, Ukraine, and the United Kingdom. Dkt. No. 1 at 4-10. According to the Government a confidential source who conspired with Defendant to recruit and organize "money mules" reported that Defendant had traveled to all these locations during the time they worked together. Dkt. No. 23 at 5-6. Further, both of Defendant's parents are Nigerian nationals. Dkt. No. 22-1 at 33.

During his pretrial services interview, Defendant denied traveling internationally.

---

2020. Dkt. No. 22-1 at 10. However, in its supplement to the Appeal, the Government references an arrest in February 2021. Dkt. No. 23 at 12. Based on the contextual facts the Court understands that these pertain to the same arrest.

However, at the detention hearing, Defendant's counsel corrected the report to indicate that Defendant had traveled to Nigeria as a child and acknowledged that since the pretrial services interview, the Government discovered that Defendant had traveled to Germany and London in 2019 and to Colombia in 2020. *Id.* at 7. The Government argues that Defendant's dishonesty regarding travel during the pretrial services interview does not bode well for his willingness to comply with conditions if released. *Id.* at 11. While Defendant's counsel suggests that that this omission was unintentional [*Id.* at 24][2], the Court remains concerned that Defendant was not forthcoming when given the opportunity. And, while Defendant has surrendered his passport, it is noteworthy that Defendant's history and recent messages show that he has the means to obtain false forms of identification. Dkt. No. 23-13.

Defendant points out that, despite his previous arrests, he has no history of failing to appear. Dkt. No. 20 at 2; Dkt. No. 22-1 at 21. Nonetheless, the record evidence, specifically the evidence presented regarding Defendant's: (1) lack of ties to this District; (2) lack of employment or other legitimate source of income; (3) failure to be forthcoming about recent international travel; and (4) use of and access to false forms of identification, raises concerns as to the risk of flight if Defendant were released. The Court concludes that there is no combination of conditions that would sufficiently mitigate this risk. Accordingly, this factor weighs in favor of detention.

### d. The Nature and Seriousness of the Danger to any Person or the Community

Regarding this factor, the Government argues that Defendant presents a danger to the community because he has a history of possessing firearms for which he was not licensed, and because he has continued to engage in fraudulent activities even after his prior arrests. Dkt. No.

---

[2] At the detention hearing Defendant's counsel appears to have suggested that Defendant's distress over being arrested contributed to his failure to answer questions about his international travel honestly and completely. Dkt. No. 22-1 at 24-25.

23 at 12-13. As previously noted, when Defendant was arrested for the instant offense, he was in possession of four debit/credit cards in the names of other individuals and businesses. Dkt. No. Specifically, Defendant had: "a Citibank Business Debit Card and a Bank of America card both in the name of Therapeutic Nostalgic and M.A.G.; a Chase Debit Card and a Chase VISA Business Debit Card in the name of JEBOONE Inc., and in the name of J.B." Dkt. No. 23 at 12-13. These business names also appear in messages between Defendant and an associate referenced as "king uk" on October 29, 2024 and October 30, 2024, in which Defendant and the associate appear to be coordinating wire transfers of $150,000, $170,000, and $2 million. Dkt. No. 23-14. This evidence strongly supports the Government's allegations that Defendant is engaged in continuing fraudulent activity.

Based on the foregoing, the Court is satisfied that there is clear and convincing evidence that Defendant would represent an "identified and articulable threat" to the community should he be released on conditions. *Cisneros*, 328 F.3d at 619. And, while Defendant argues that home detention with restricted internet access "would substantially reduce his ability to evade Court supervision or obtain measures to flee the jurisdiction," the Court notes that there is no evidence in the record to indicate that there is anywhere within this District where Defendant could reside if placed on home detention. Further, given that the offense conduct involves online activity, which pretrial services does not have the ability to monitor, the Court finds that there are no conditions that would mitigate the risk to the community should Defendant be released. Accordingly, this factor weighs in favor of detention.

## CONCLUSION

Having conducted a de novo review, the Court finds that the Government has met its burden to prove risk of flight by a preponderance of the evidence, and dangerousness by clear and

convincing evidence. Accordingly, Defendant will be detained pending trial.

IT IS THEREFORE ORDERED that the Government's Appeal of Magistrate Judge's Order [Dkt. No. 13] is GRANTED and the Order Setting Conditions of Release is REVERSED.

IT IS FURTHER ORDERED that the Defendant shall be detained pending trial. Defendant is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. Defendant must be afforded a reasonable opportunity to consult privately with defense counsel. On order of the United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver Defendant to the United States Marshal for a court appearance.

Dated this 16th day of December 2024.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE